# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

PATRINA ROBINSON,                    )
                                     )
    Plaintiff,               )
                                     )
v.                                   )      No. 2:17-cv-02768-SHM-dkv
                                     )
SHELBY COUNTY PUBLIC DEFENDER,       )
*et al.*,                            )
                                     )
    Defendants.              )

## ORDER

Before the Court is Defendants Shelby County Public Defender and Shelby County Government's Motion to Dismiss, filed on December 8, 2017. (ECF No. 16; see also ECF No. 16-1.) Plaintiff Patrina Robinson responded on January 12, 2018. (ECF No. 23.) Defendants replied on January 25, 2018. (ECF No. 24.)

Plaintiff's Complaint alleges that Defendants: (1) discriminated against Plaintiff on the basis of her race, in violation of 42 U.S.C. §§ 2000e, et seq. ("Title VII"); (2) subjected Plaintiff to a hostile work environment, in violation of Title VII; (3) retaliated against Plaintiff, in violation of Title VII; (4) discriminated and retaliated against Plaintiff, in violation of 42 U.S.C. § 1983; and (5) discriminated against Plaintiff, in violation of the Americans with Disabilities Act

of 1990, 42 U.S.C. §§ 12101, et seq., as amended by the ADA
Amendment Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553
(2008) ("ADA"). (Id. at 13-16.)

For the following reasons, Defendants' Motion to Dismiss is
GRANTED.

## I. Background

Plaintiff is an employee of Defendant Shelby County Public
Defender. (ECF No. 1 at 2.)[1] Plaintiff alleges that in December
2014 she applied for a position as Case Coordinator, Social
Worker, or Legal Assistant (the "Coordinator position"). (Id.
at 3.) The Coordinator position would have raised Plaintiff's
annual salary by $15,000. (Id.) Plaintiff was interviewed for
the Coordinator position, but was not hired. (Id.)

Plaintiff alleges that in March or April 2015[2] she "reported
an attorney named Laurie Sansbury, a white female, for making
threats against two African American female attorneys." (Id. at
4.) Plaintiff alleges that in June 2015 Sansbury retaliated
against Plaintiff by "harassing . . . [Plaintiff], including
physically bumping into [Plaintiff] in a hostile manner during a

---

[1] Unless otherwise noted, all pin cites for record citations are to the
"PageID" page number.
[2] The Complaint is not clear about whether Plaintiff reported Laurie Sansbury
to management in March 2015, April 2015, or both. (Compare ECF No. 1 at 4
("On or about April 9, 2015 . . . [Plaintiff] reported an attorney named
Laurie Sansbury, a white female, for making threats against two African
American female attorneys.") with (Id. at 6 (alleging, in a section titled
"April 2015 Incident and Aftermath," that Plaintiff reported Laurie Sansbury
to management in "approximately March 2015.").)

staff seminar." (Id. at 5.) Plaintiff also alleges that Sansbury harassed Plaintiff by "stand[ing] in front of [Plaintiff's] desk and glar[ing] at her while tapping her fingers on the desk" and "follow[ing] [Plaintiff] around the office and taunt[ing] her." (Id.) Sansbury allegedly assigned Plaintiff an excessive workload, stalked and verbally harassed Plaintiff at work, and intentionally overlooked Plaintiff for promotions. (Id. at 7.) Plaintiff alleges that, although she reported the harassment to management, no action was taken against Sansbury. (Id. at 6.) Instead, "[a]fter reporting the issues to management, management began harassing [Plaintiff]" by adding "extra work duties [] to her already full case workload." (Id. at 8.)

On May 20, 2015, Plaintiff was assigned to transcribe an interview. (Id. at 10.) Plaintiff alleges that, as she was leaving for the day, another employee "blocked [Plaintiff] from exiting her cubicle and stated, 'I need those transcripts today.'" (Id.) After Plaintiff said that she "would complete [the transcripts] as soon as she was able," the employee allegedly blocked Plaintiff from exiting her cubicle "for three to five minutes." (Id.)

Plaintiff alleges that in August 2015 she asked another employee about a Jail Release Coordinator position with

Defendant Shelby County Public Defender.  (Id. at 6.)  Plaintiff
was later told that a white male had been selected for the Jail
Release Coordinator position.  (Id.)

Plaintiff alleges that in August 2015 she "received a
reprimand for [] not properly signing out on the EIO board,"
although "it was general practice in her department to not use
this signing out procedure."  (Id.)  Plaintiff alleges that she
was "the only employee who received a reprimand for this alleged
failure."  (Id.)

Also in August 2015, Plaintiff requested sick leave from
August 19, 2015, through August 21, 2015.  (Id. at 8.)  A
management employee asked Plaintiff to "bring her a doctor's
note, despite the policy only requiring a doctor's note for more
than four (4) days of sick leave."  (Id.)  "When [Plaintiff]
asked why she needed a doctor's note for less than four (4) days
of sick leave, [the manager] stated that she is the office
manager and she can do whatever she wanted."  (Id.)

Beginning on June 1, 2016, Plaintiff took several months of
leave to seek treatment for a major illness.  (Id. at 10.)
Plaintiff alleges that, when she returned to work in January
2017, she was told she "was no longer an employee of [Defendant]
Shelby County because [Plaintiff] had been on Long Term
Disability[,] which placed her on unemployed status."  (Id. at

12.)  Plaintiff alleges that she is aware of several people who took leave "for extended periods of time (including for medical reasons) and returned to their same positions without having to reapply."  (Id. at 13.)  Plaintiff concedes that she later received an email "that [she] was to report to duty on January 17, 2017 and that [Defendants] would pay for the days [Plaintiff] missed due to the errors that initially left [Plaintiff] in limbo."  (Id. at 12.)  Plaintiff alleges that "she was pressured to work in a different area of [Defendants'] office."  (Id.)

On October 17, 2017, Plaintiff filed her Complaint.  (ECF No. 1.)

## II. Jurisdiction

This Court has jurisdiction over Plaintiff's federal-law claims.  Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." The Complaint alleges that Defendants discriminated and retaliated against Plaintiff in violation of Title VII, § 1983, and the ADA.  (ECF No. 1 at 13-16.)  Those claims arise under the laws of the United States.

## III. Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted).

The Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp., 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). However, the Court need not accept as true legal conclusions cast in the

form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); see also Papasan v. Allain, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Rule 12(b)(6) "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP, 601 F. Supp. 2d 991, 997 (W.D. Tenn. Mar. 10, 2009).

## IV. Analysis

### A. Title VII Race Discrimination Claim

Defendants move to dismiss Plaintiff's Title VII race discrimination claim because "Plaintiff has failed to set out facts in her Complaint under which the Court could find a reasonable inference of actionable racial discrimination in violation of Title VII." (ECF No. 16-1 at 67.) Plaintiff contends that she "has exceeded the standard for pleadings and .

. . successfully set out a *prima facie* case of discrimination under Title VII."  (ECF No. 23 at 103.)

The essential elements of a Title VII race discrimination claim are (1) that the plaintiff is a member of a protected group; (2) that she was subjected to an adverse employment decision; (3) that she was qualified for the position; and (4) that either similarly situated nonprotected employees were treated more favorably or she was replaced by someone outside her protected class.  See Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 363 (6th Cir. 2010).

An adverse employment decision is a "materially adverse change in the terms and conditions of [plaintiff's] employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000).

Plaintiff alleges that Defendants gave her "excessive workloads."  (ECF No. 1 at 7.)  That allegation constitutes "inconvenience or an alteration of job responsibilities" that the Sixth Circuit has held is "not sufficient to constitute an

adverse employment action." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (internal citations omitted).

Plaintiff alleges that she was "glare[d] at," "follow[ed] . . . around the office," and "block[ed] . . . from leaving her office . . . for three to five minutes." (ECF No. 1 at 5-10.) Plaintiff does not allege that those actions altered the "terms and conditions of [her] employment." *Hollins*, 188 F.3d at 662. The actions alleged are not adverse employment actions.

Plaintiff successfully alleges a single adverse employment action. Defendants told her she "[could] not to return to her previous position [with Defendants] due to her having been out on sick leave and returning 'later than expected.'" (ECF No. 1 at 12.) Plaintiff alleges that she is "aware of several people to leave [their employment with Defendants] for extended periods of time . . . and return[] to their same positions." (*Id.* at 13.)

Plaintiff's allegation is not sufficient under Title VII because she does not allege that similarly-situated nonprotected employees were treated more favorably. Plaintiff has not alleged that those treated more favorably were nonprotected employees, or that they were "similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th

Cir. 1992) (emphasis in original).  Plaintiff fails to state a claim for race discrimination under Title VII.[3]

Defendants' Motion to Dismiss is GRANTED insofar as it seeks to dismiss Plaintiff's claim for race discrimination under Title VII.

### B. Title VII Hostile Work Environment Claim

Defendants move to dismiss Plaintiff's hostile work environment claim.  (ECF No. 16-1 at 64-67.)  Plaintiff responds that "[i]n her detailed Complaint, there can be no question as to the plausibility of Plaintiff's claims that she was subject to [a] hostile work environment due to her race."  (ECF No. 23 at 103.)

To establish the existence of a hostile work environment under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) [the] employer [is liable]."  Clay v. United Parcel Serv., Inc., 501 F.3d 695, 706 (6th Cir. 2007).

---

[3] In her Response to Defendants' Motion to Dismiss, Plaintiff states that she "did not plead that the failure[] to promote her to the [Coordinator position] was due to race as she set out facts sufficient to find plausibility that it was due to retaliation."  (ECF No. 23 at 103.)  The Court discusses Plaintiff's failure to promote claim below in Part IV.C.

To satisfy the third prong, a plaintiff must produce "(1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." Williams v. CSX Transp. Co., Inc., 643 F.3d 502, 511 (6th Cir. 2011).

To satisfy the fourth prong, a plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Clay, 501 F.3d at 707 (quoting Williams v. Gen. Motors Corp., 187 F.3d 553, 560, 562 (6th Cir. 1999)). That showing "requires the court to examine, under the totality of the circumstances, 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" Id. (quoting Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006)) (alteration in original). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988).

11

Several of Plaintiff's allegations do not address race-based harassment. Plaintiff alleges that Sansbury "would often stand in front of [Plaintiff's] desk and glare at her while tapping her fingers on the desk," gave Plaintiff "excessive workloads," "stalked [Plaintiff] at work," "stared at [Plaintiff] in an attempt to intimidate [her]," "verbally harassed" Plaintiff, and "intentionally [] overlooked [Plaintiff] for promotions." (Id. at 5-7.) Plaintiff does not allege facts showing the use of race-specific terms or that employees of other races were treated differently. (Id. at 5-7.) Plaintiff alleges that a supervisor "physically block[ed] [Plaintiff] from leaving her office," but does not allege that she was blocked because of her race. (Id. at 10.) Plaintiff alleges that she was blamed "for not checking the doors" at the office, but does not allege that she was blamed because of her race. (Id. at 9.)

Even assuming Plaintiff had alleged race-based harassment, she does not allege facts showing that the harassment unreasonably interfered with her work performance. She alleges that she was required to bring a doctor's note, "despite the policy only requiring a doctor's note for more than four (4) days of sick leave." (Id. at 8.) She alleges that she was the "only employee who received a reprimand" for "allegedly not

12

properly signing out on [Defendants'] board." (Id. at 6.)
Those isolated forms of harassment, although inappropriate, are
not so "extreme [as] to amount to a change in the terms and
conditions of employment." Faragher, 524 U.S. at 788; see also
Wilson v. Dana Corp., 210 F. Supp. 2d 867, 882 (W.D. Ky. 2002)
(finding that "[p]laintiffs were subject to repugnant conduct"
but granting a motion to dismiss because "no reasonable jury
could determine that [p]laintiffs . . . suffered harassment that
was severe, pervasive, and extreme").

Plaintiff's most serious allegation is that a supervisor
"physically block[ed] [Plaintiff] from leaving her office . . .
for three to five minutes." (ECF No. 1 at 10.)

Courts considering similar allegations have found them
insufficient to sustain a hostile work environment claim. See
Chavers v. Shinseki, 667 F. Supp. 2d 116, 126 (D.C. Cir. 2009)
(plaintiff's allegation that defendant "blocked plaintiff's exit
path from a classroom with a steel cart, told her he would not
move until she gave him a kiss, but did not put his hands on
plaintiff, even when she attempted to physically move him away"
was insufficient for a hostile work environment claim); Gordon
v. Duke, 279 F. Supp. 3d 46, (D.D.C. 2017) (plaintiff's
allegation that defendant "confronted her in her office and

physically blocked the doorway to prevent her exit" fell "far short of establishing [a hostile work environment]").

The Supreme Court has said that to determine "whether an environment is 'hostile,'" courts must consider, among other factors, "the frequency of the discriminatory conduct" and "whether it [was] physically threatening or humiliating." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Plaintiff does not allege that she was blocked from leaving her office on more than one occasion. She does not allege that the supervisor physically assaulted or threatened her.

The conduct Plaintiff alleges, taken as a whole, is insufficiently frequent and serious to support her claim. Plaintiff's allegations are not actionable under Title VII.

Plaintiff has failed to state a claim for hostile work environment under Title VII. Defendants' Motion to Dismiss is GRANTED insofar as it seeks to dismiss Plaintiff's claim for hostile work environment.

### C. Title VII Retaliation Claim

Defendants contend that Plaintiff's claim for retaliation should be dismissed because "[t]he Complaint does not indicate that Plaintiff engaged in any activity protected by Title VII" and "Plaintiff has not set forth facts that indicate [any adverse employment actions] would not have happened but for her

participation in any activity protected by Title VII." (ECF No. 16-1 at 68-69.) Plaintiff responds that Defendants retaliated against her when they denied her the Coordinator position and the Jail Release Coordinator position. (ECF No. 23 at 105-07.)

To state a claim of retaliation under Title VII, Plaintiff must allege that: (1) she acted in a manner protected by Title VII; (2) Defendants knew of that exercise of protected activity; (3) Defendants subsequently took an adverse action against Plaintiff; and (4) the adverse action had a causal connection to the protected activity. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

A plaintiff's burden to establish a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. Id. Any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" is a materially adverse employment action in the retaliation context. Id. "[P]etty slights, minor annoyances, and simple lack of good manners" are not materially adverse actions. Id.

Plaintiff fails to state a claim for retaliation because she does not satisfy the third or the fourth element. Plaintiff engaged in a protected activity when she complained of Sansbury's behavior to management in March or April 2015. (ECF

No. 1 at 4, 6; see Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014) (holding that protected activity includes "not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices").)  Defendants' decision not to hire Plaintiff for the Coordinator position was a materially adverse action.

Plaintiff does not allege that Defendants did not hire her after Plaintiff complained of Sansbury's behavior.  Plaintiff alleges that she applied for the Coordinator position in December 2014.  (See ECF No. 1 at 3.)  She alleges that she reported Sansbury's behavior to management in March or April 2015.  (Id. at 4, 6.)  Although Plaintiff alleges that she "did not receive the [Coordinator] position for which she had been groomed and had been performing," she does not allege when Defendants denied her the position.[4]  (See generally id.) Plaintiff has failed to allege that Defendants took an adverse action against her after Plaintiff's protected activity.

Plaintiff fails to satisfy the fourth element of a retaliation claim.  She does not allege facts supporting a

_____

[4] In her Response to Defendants' Motion to Dismiss, Plaintiff argues that she was denied the Coordinator position "after [she] reported racial discrimination in March and April 2015."  (ECF No. 23 at 106.)  Even if the Court construes Plaintiff's Response as "clarify[ing] allegations in her complaint whose meaning is unclear," Plaintiff fails to state a claim for retaliation because she does not satisfy the fourth element.  Pegram v. Hendrich, 530 U.S. 211, 229 n.10 (2000).

16

causal connection between her protected activity and the adverse action. She contends that "[i]t is reasonable to infer and plausible that denying [Plaintiff] the position and pay was a way to punish her for [filing] the report of racial discrimination." (ECF No. 23 at 106.) Because Plaintiff has not alleged when she was denied the Coordinator position, that argument fails. A causal connection can be inferred from temporal proximity only when "an adverse employment action occurs very close in time after an employer learns of a protected activity." Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008). Plaintiff cannot rely on temporal proximity because she has not alleged when she suffered an adverse employment action.

Plaintiff's other allegations also fail to state a claim for retaliation. She alleges that Defendants retaliated against her when they refused to hire her for the Jail Release Coordinator position. (ECF No. 1 at 6.) She alleges that she "was given a verbal and written reprimand . . . and treated with hostility by management instead of properly interviewed for the position for which she inquired." (Id.) Plaintiff does not allege that she actually applied for the Jail Release Coordinator position or that her inquiry required an interview. The alleged reprimand is a "de minimis employment action[]" that

17

is not actionable under Title VII. <u>Bowman</u>, 220 F.3d at 462. Plaintiff's allegations are not sufficient to state a retaliatory adverse employment action.

Plaintiff alleges that Defendants retaliated against her when another attorney bumped into her and glared at her in a threatening manner, a white attorney followed her, she was given low ratings on her evaluations, she was given additional tasks at work, she was asked to produce a doctor's note when she requested sick leave, and she was blocked from leaving her office for several minutes. (ECF No. 1 at 104-09.) Those allegations are insufficient to establish an adverse action. "[A] negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary." <u>Tuttle v. Metro. Gov't of Nashville</u>, 474 F.3d 307, 322 (6th Cir. 2007). "[C]hanges in . . . working conditions that cause no materially significant disadvantage" are also insufficient to establish an adverse action. <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 886 (6th Cir. 1996) (internal quotations omitted). Defendants' actions did not constitute adverse employment actions.

Plaintiff alleges that Defendants retaliated against her when she "was pressured to work in a different area of [Defendants'] office" on her return from sick leave in January

2017.  (ECF No. 1 at 12.)  Plaintiff contends that her new assignment was an adverse employment action because she was "made to work with the female white attorney who creat[ed] a racially hostile work environment for [Plaintiff]."  (ECF No. 23 at 110 (internal citations omitted).)  Plaintiff has not alleged sufficient facts to support a claim of racially hostile work environment.  She has not alleged that she suffered a change in pay, benefits, or job status as a result of her reassignment. See Kocsis, 97 F.3d at 885-87 (holding that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").  Plaintiff's reassignment to a different position was not a materially adverse action.

Plaintiff fails to state a claim for retaliation. Defendants' Motion to Dismiss is GRANTED insofar as it seeks to dismiss Plaintiff's Title VII retaliation claim.

**D. Section 1983 Claim**

Defendants contend that Plaintiff's § 1983 claim should be dismissed because the "Complaint . . . does not identify any policy, practice or custom that led to Plaintiff's alleged injuries."  (ECF No. 16-1 at 69.)  Plaintiff argues that she has sufficiently pled her § 1983 claim because "[she] alleged Defendant[s] violated their internal hiring, anti-

19

discrimination, [] anti-harassment, and anti-discrimination policies that led to Plaintiff's injuries." (ECF No. 23 at 110.)

A local government may not be held vicariously liable under § 1983 for injuries inflicted by its employees or agents. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). A local government is only liable under § 1983 when a "policy or custom . . . inflicts the injury." Id. To sufficiently allege that a municipality such as Defendant Shelby County Government, violated § 1983, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under the color of state law, and (3) that a municipality's policy or custom caused that violation to happen." Bright v. Gallia County, Ohio, 753 F.3d 639, 660 (6th Cir. 2014) (internal citations omitted). A conclusory allegation that a municipality had an unlawful policy or custom, without identifying the policy or stating a pattern of conformance to the custom, is not sufficient. See Huffer v. Bogen, 503 F. App'x 455, 462 (6th Cir. 2012) (dismissing a § 1983 claim against a county defendant when the complaint "failed to identify any policy or custom that resulted in a constitutional violation").

Plaintiff fails to state a claim under § 1983. The Complaint does not sufficiently allege that Defendants had a policy or custom that caused a violation of Plaintiff's rights. Defendants' Motion to Dismiss is GRANTED insofar as it seeks to dismiss Plaintiff's § 1983 claim.

### E. Americans with Disabilities Act Discrimination Claim

Defendants argue that Plaintiff's ADA claim should be dismissed because "Plaintiff does not allege that she missed so much as a single paycheck, or that she even had a single reduced paycheck," and "[Plaintiff] does not make any allegation that [the change in position] was a demotion, that it paid less, or that it had materially different responsibilities from her prior position." (ECF No. 16-1 at 72.) Plaintiff contends that she has "plausibly set out a claim for disability harassment discrimination and disability retaliation" by alleging that "she was terminated for several days and subsequently transferred and reassigned to a new position working with her harasser." (ECF No. 23 at 111.)

"To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability."

<u>Ferrari v. Ford Motor Co.</u>, 826 F.3d 885, 891 (6th Cir. 2016) (internal citations omitted).

Assuming Plaintiff could satisfy the first two elements, Plaintiff's ADA claim fails because she did not suffer an adverse employment action when she was reassigned to a different position. Plaintiff does not allege that she suffered a change in pay, benefits, or job status as a result of her reassignment. She concedes that Defendants agreed to "pay for the days [Plaintiff] missed due to the errors that initially left [Plaintiff] in limbo." (ECF No. 1 at 12.) Plaintiff's change in position is not sufficient to constitute an adverse employment action.

Defendants' Motion to Dismiss is GRANTED insofar as it seeks to dismiss Plaintiff's ADA claim.

**V. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.


So ordered this 21st day of June, 2018.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE